EDWARDS, Judge.
At 5:30 P.M. on September 19, 1978, an automobile accident occurred at the intersection of East Prospect and East Park streets in the city of Houma. Clara P. Verdin and Janice Crochet Robichaux were the drivers. Karen Crochet was a guest passenger in the Robichaux vehicle. Both Crochet and Robichaux were injured.
Alleging that the negligence of Clara Verdin had caused the accident, Karen Crochet brought suit (No. 14181) against Clara P. Verdin; James W. Verdin, Sr., the husband of Clara Verdin; Maryland Casualty Insurance Company, the Verdins’ liability carrier; State Farm Mutual Automobile Insurance Company, the uninsured motorist carrier of the Robichaux’s; and Louisiana *441 Farm Bureau Mutual Insurance Company, Crochet’s own uninsured motorist carrier.[1] Plaintiff sought $305,000, legal interest and all costs.
In a separate action (No. 14182), Janice Crochet Robichaux, the sister of Karen Crochet, and her husband, Bernard Robichaux, Jr., brought suit against the Verdins, Maryland Casualty Insurance Company and State Farm Mutual Automobile Insurance Company. Janice Crochet Robichaux sought $175,000 while Bernard Robichaux sought $12,775 on behalf of the community. Plaintiffs also prayed for legal interest and all costs.
In Karen Crochet’s suit, Maryland Casualty named Janice Robichaux and her insurer, State Farm, as third party defendants. Maryland Casualty alleged that the accident was solely due to Janice Robichaux’s negligence or that, in the alternative, the accident was caused by both Janice Robi-chaux and Clara Verdin, in which case contribution was sought from Robichaux and her insurer, State Farm.
In further pleadings filed in the Crochet suit, both State Farm and Southern Farm Bureau named the Verdins as third party defendants.
In the Robichauxs’ case, Maryland Casualty denied liability and, alternatively, pled the contributory negligence of Janice Robi-chaux. Additionally, State Farm named the Verdins as third party defendants.
On November 12, 1979, the two separate cases were ordered consolidated. Trial was by jury[2] and was divided into two parts, liability and damages.
At the close of evidence on the matter of liability, the jury was given interrogatories which were answered as follows:
”1. Do you find the defendant, Mrs. Clara Verdin, was negligent in this accident? Yes X ’no_
2. If your answer to Interrogatory No. 1 is "yes", do you find that her negligence was a proximate cause of the accident? Yes X No_
3. If your answer to Interrogatories No. 1 or 2 is "yes", do you find that Mrs. Janice Crochet Robichaux was negligent in this accident? Yes_ No_X
4. If your answer to Interrogatory No. 3 is "yes", do you find her negligence was a proximate cause of the accident? Yes_ No X
5. If your answer to Interrogatories No. 3 and 4 is "no", do you find that Mrs. Janice Crochet Robichaux was contributority negligent in this accident? Yes X No
6. If your answer to Interrogatory No. 5 is "yes", do you find that her contributory negligence was a proximate cause of the accident? Yes X No_
7. Do you find that at the time of the accident Mrs. Clara Verdin was on a mission or acting for the benefit of the community of acquets *442 and gains existing between her and her husband, Mr. James W. Verdin, Sr.? Yes_ No X "
The trial court, during a subsequent and lengthy conference in chambers, decided that the jury findings as to interrogatories 5 and 6 were “clearly wrong” and “not in any way supported by the evidence.” The answers to interrogatories 5 and 6 were therefore stricken from the record, following which the trial court instructed the jury to award damages to Janice Crochet Robi-chaux if the jury were convinced plaintiff had proven same.
At the conclusion of evidence pertaining to damages, general verdicts awarding $1,000 to Janice Crochet Robichaux and $12,600 to Karen Crochet were returned. All plaintiffs have appealed. Maryland Casualty and the Verdins have answered the appeal.
It is clear that the interrogatories given to the jury were improper and confusing.[3] Although two separate cases were consolidated for trial purposes, the acts on which liability was predicated were the same. Essentially, since Janice Crochet Robichaux was found not negligent, she could not possibly have been found contributorily negligent. That the jury arrived at such an irreconcilable result is proof of their confusion. Interrogatories 5 and 6 should have been deleted as was suggested by plaintiff’s counsel.[4]
LSA-C.C.P. Art. 1812 provides in part:
“When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, the court shall not direct the entry of judgment but may return the jury for further consideration of its answers or may order a new trial.”
The trial court neither returned the jury for further consideration nor ordered a new trial. Rather, evidence as to damages was heard. Because it is now impossible to determine exactly what the jury intended or how badly they were confused and because the jury rendered a verdict in favor of Janice Crochet Robichaux despite having found her contributorily negligent (which finding the trial court was not free to ignore under LSA-C.C.P. Art. 1812), we must conclude that the interrogatories as propounded were reversible error. Woods v. Cumis Insurance Society Inc., 364 So.2d 213 (La.App. 4th Cir. 1978).
Despite reversible error, the entire suit was heard and this court has the entire record for review. Based on judicial efficiency and the reality of fact review, we decide the case. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975).[5]
Taken as a whole, the record reveals that just prior to the accident, Clara Verdin was driving her car in a southerly direction on East Park Street while Janice Crochet Ro-bichaux was headed in a northerly direction on the same street. At the intersection of East Prospect Street, Mrs. Verdin, without significantly slowing down, attempted to turn left across the lane occupied by the Robichaux car, but the vehicles collided. The right front of Mrs. Verdin’s car was damaged, whereas the entire front of the Robichaux vehicle was damaged.
We find that this accident was caused solely by the negligence of Clara P. Verdin and that neither Karen Crochet nor Janice Crochet Robichaux was negligent in any way. Thus, the only remaining issue is damages.
Janice Robichaux suffered injuries when her head struck the windshield at the moment of impact. Dr. Stephen Heilman, who saw her two days later, noted as symptoms *443 headaches, sore neck, contusions, and an abrasion on the skull with a temporary loss of some hair. Dr. Heilman’s diagnosis was a mild cervical strain (as contrasted with a moderate or severe strain) and he prescribed muscle relaxants and analgesics.
Dr. Christopher E. Cenac, an orthopedic surgeon, first saw Robichaux eight days after the accident. His diagnosis was a “resolving acute cervical and lumbosacral strain” which he characterized as “mild.” Dr. Cenac testified that Robichaux could expect intermittent pain from a soft tissue injury to last almost two years. He discharged the patient because she had no orthopedic mechanical findings or neurological deficits.
Robichaux went to Dr. Richard Whitney, a chiropractor, from December 8, 1978, to June 14, 1979, because she had backache, headache, and neck pain. Dr. Whitney adjusted her spine until she was symptom free.
Dr. Dexter Gary, an orthopedic surgeon, first saw Robichaux on August 9, 1979. She complained of dizziness and headaches. Dr. Gary prescribed exercises to strengthen the neck musculature.
Dr. W. J. Hagen, an otorhinolaryngologist, saw Robichaux on September 11, 1979, nearly one year after the accident. She complained of dizziness. Dr. Hagen made a diagnosis of labyrinthitis, an upset of the balance portion of the inner ear. Dr. Ha-gen testified that the labyrinthitis could have been caused by the accident. He further testified, however, that he had treated Robichaux on May 8, 1978, for a sore throat and ear infection of two months duration and admitted that labyrinthitis can be caused by any bacterial or viral infection settling in the labyrinth. After the September 11, 1979, visit, Dr. Hagen treated Robichaux with antihistamine to cut down on stimulations causing dizziness. When Robichaux reported on November 13, 1979, that she was no longer dizzy, Dr. Hagen told her to stop the drugs.
In May of 1980, Robichaux saw Dr. Frank Norman, another otorhinolaryngologist. She complained of dizziness, nausea and ringing in the ears. Dr. Norman diagnosed inner ear balance problems and a slight loss of hearing. His prognosis was good with the possible exception of balance problems. Dr. Norman assumed that the problems originated with the accident but, like Dr. Hagen, he conceded that viral infection, drugs and even aspirin could also cause the symptoms. He also testified that since Ro-bichaux had first complained of dizziness one year after the accident and then had waited another year to see a second physician for the same problems, those problems might have been due to a cause other than the accident.
We find Janice Robichaux to have suffered a mild cervical strain together with contusions and a skull abrasion. Plaintiff has not shown that her mild balance problem was more likely than not caused by the accident. We therefore fix general damages at $5,000.
Karen Crochet suffered a whiplash injury in the accident. Dr. Heilman first saw her on September 21, 1978, and treated her neck and head pain with a soft cervical collar. Finding that she was recovering and that she had no muscle spasm, he discharged her in two weeks.
Crochet first saw Dr. Richard M. Landry, an orthopedic surgeon, on October 24, 1978. She had limited spinal motion, swelling and tenderness in the shoulder, and mild muscle spasm in the lower back. Dr. Landry diagnosed a fracture of the L-4 vertebral body but found no injury to the cervical spine. He also diagnosed a shoulder strain. To give the fracture time to heal, Dr. Landry prescribed conservative treatment which consisted of wearing a corset and sleeping on a firm surface. On December 21, 1978, Crochet had normal motion of the spine and no neck complaints. An x-ray showed the fracture healing well.
Crochet’s next visit to Dr. Landry was on July 19, 1979. During the interim, Crochet had received spinal manipulation from Dr. Whitney until she was symptom free. (Dr. Whitney described Crochet’s spinal troubles as “a congenital problem.”) On July 19, Dr. *444 Landry found Crochet’s fracture had healed. On August 24, 1979, Crochet told Dr. Landry that she only had occasional pain. Her exam was “completely normal” and Dr. Landry prescribed certain exercises. On September 24, 1979, Crochet stated that her back felt much better. X-rays showed the fracture to be all but healed.
On April 16, 1980, Crochet again visited Dr. Landry complaining of pain in the buttock area. X-rays revealed a narrowing of the L-5 disk. Dr. Landry felt “that the particular condition was normal for her.” He advised Crochet to limit her activities.
On July 16, 1980, at the time of trial, Crochet again saw Dr. Landry and complained of back pain. Her examination, however, was normal with no neurological findings, no muscle spasms and no neck pain.
Dr. Landry testified that the L-5 disk narrowing might have been aggravated by the accident and stated that Crochet had suffered a 10% disability. He suggested that Crochet’s problems might increase with age and that surgery might someday be needed. On cross-examination, Dr. Landry conceded that there was no present need for surgery, only a possible future need, and that plaintiff “could do nearly everything she did before.” Dr. Landry also admitted that the possible presence in Crochet’s spine of a congenital condition (Schmarl’s nodule) might in itself cause problems, even without a disk fracture.
Dr. Dexter Gary, a partner of Dr. Landry, and also an orthopedic surgeon, saw Crochet once as a substitute for Dr. Landry. He testified that Crochet’s back problem was not congenital.
Dr. Claude S. Williams, an orthopedic surgeon, saw Crochet once, on May 28, 1980. He observed no mechanical or neurological signs and no nerve root compression. He noticed that plaintiff’s symptoms had diminished since the accident and the prognosis was good. He found the L-5 disk problem to be a natural one.
We find Karen Crochet to have suffered a fracture of the L-4 disk and to have endured sporadic back pains for two years. We find no real prospect for future surgery and plaintiff has shown only a remote possibility for the need of same. We therefore fix general damages at $15,000.
Pursuant to stipulation by counsel, Karen Crochet will be awarded $475 in medical costs. State Farm Mutual Automobile Insurance Company will likewise be awarded $3,300.51 for medical expenses already paid to plaintiffs.
Expert witness fees will be taxed as costs as follows:
Dr. Stephen Heilman $250.00
Dr. Christopher E. Cenac $250.00
Dr. Richard Whitney $150.00
Dr. Dexter Gary $250.00
Dr. W. J. Hagen $250.00
Dr. Frank Norman $250.00
Dr. Richard M. Landry $250.00
For the foregoing reasons, the judgment appealed from is amended and affirmed. It is hereby adjudged, ordered and decreed that in the above consolidated cases, there be, and there hereby is, judgment in favor of Karen Crochet and against Maryland Casualty Insurance Company in the amount of $15,475.00; judgment in favor of Janice Crochet Robichaux and against Maryland Casualty Insurance Company in the amount of $5,000.00; judgment in favor of State Farm Mutual Automobile Insurance Company and against Maryland Casualty Insurance Company in the amount of $3,300.51; judgment condemning Maryland Casualty Insurance Company to pay legal interest on the above amounts from the date of judicial demand. All other demands are hereby dismissed. All costs, both trial and appellate, including the above $1,650.00 in expert witness fees, are to be paid by Maryland Casualty Insurance Company.
AMENDED AND AFFIRMED.

. Plaintiff incorrectly identified her own uninsured motorist carrier as Louisiana Farm Bureau Mutual Insurance Company. Answer was made and the suit was defended by Southern Farm Bureau Casualty Insurance Company.

. Appellants urge that technical errors should have resulted in a denial of trial by jury. In view of our decision today, this argument need not be answered.

. A review of the record of the in chambers conference on the morning of July 17, 1980, reveals that both the trial court and certain counsel were markedly confused as to the significance of the interrogatories. The jury can hardly be expected to have been less so.

. R 93-96.

. Were the facts close in this case, we would remand. Ragas v. Argonaut Southwest Insurance Co., 388 So.2d 707 (La.1980). The facts, however, are clear and decisive.